Slip Op. 07-111

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |  |
|---|---|---|---|
| WHIRLPOOL CORPORATION, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Before: | WALLACH, Judge |
| v. | : | Court No.: | 03-00526 |
| | : | | |
| UNITED STATES, | : | **PUBLIC VERSION** | |
| | : | | |
| Defendant. | : | | |
| | : | | |

[Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.]

Dated: July 18, 2007

Baker & McKenzie LLP, (Lynn S. Preece, Bart M. McMillan and Louisa V. Carney) for Plaintiff Whirlpool Corporation.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Bruce N. Stratvert); and Chi S. Choy, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of Counsel; for Defendant United States.

## OPINION

**Wallach, Judge:**

### I
### INTRODUCTION

Plaintiff Whirlpool Corporation ("Whirlpool") challenges the decision of the United

States Customs and Border Protection ("Customs") to classify its imported merchandise (entry

number 327-0126404-9) under Heading 9032 of the Harmonized Tariff Schedule of the United

States ("HTSUS") 1999 as an "[a]utomatic regulating or controlling instrument[ ] and apparatus"

at a duty rate of 1.7% <u>ad valorem</u>.[1]  This court has jurisdiction pursuant to 28 U.S.C. § 1581(a),

and jurisdiction is uncontested by the parties.  Because the subject merchandise is classified

under an <u>eo nomine</u> designation as an automatically controlling apparatus in HTSUS Heading

9032, Customs' classification of the refrigerator control box subassembly in subheading

9032.89.60 was proper.  Accordingly, Plaintiff's Motion for Summary Judgment is Denied and

Defendant's Motion for Summary Judgment is Granted.

## II
## BACKGROUND

Plaintiff Whirlpool is the importer of record for entry number 327-0126404-9, consisting

of refrigerator control box subassemblies-1 knob, identified as part number 2204604. Amended

Complaint ("Complaint") ¶ 2; Answer to Amended Complaint ("Answer") ¶ 2; Composite

Statement of Uncontested Facts ¶ 8.  The subject merchandise was exported from Mexico by

Whirlpool de Reynosa, S.A. de C.V., and entered the United States through the port of Hidalgo,

Texas on March 30, 1999.  In its imported condition the merchandise consisted of a thermostat,

defrost timer, light socket, and wire harness, all of which were contained inside a plastic

housing.[2] Complaint ¶ 2-3, 5; Answer ¶ 2-3, 5.  Customs classified part number 2204604 under

HTSUS Subheading 9032.89.60[3] and liquidated on March 8, 2002, assessing duties at the rate of

---

[1] This rate represents the Column 1 general rate for HTSUS Subheading 9032.89.60 in effect at the time of entry in 1999.

[2] Plaintiff alleges that the imported merchandise also contained "terminals and connectors," but the Government denies this.  This discrepancy is not material to the court's decision, however.

[3] HTSUS Heading 9032 and subheading 9032.89.60 provide for:

9032                              Automatic regulating or controlling instruments and

1.7% <u>ad valorem</u> and disallowed duty-free treatment under the North American Free Trade

Agreement ("NAFTA"). Complaint ¶ 6-8; Answer ¶ 6-8.  Plaintiff timely paid all additional

duties and fees assessed on liquidation, and on June 5, 2002, filed a protest against Customs'

classification and liquidation decision and its denial of NAFTA benefits for the entry.[4] Complaint

¶ 9, 10; Answer ¶ 9, 10.  Customs denied the protest on February 13, 2003, and Plaintiff timely

filed a summons with this court on July 30, 2003.  Whirlpool argues that the subject merchandise

was improperly classified in HTSUS subheading 9032.89.60, and should instead have been

classified in HTSUS subheading 8537.10.90,[5] or alternatively in HTSUS subheading

8418.99.80.[6] Complaint ¶ 13, 15, 23.  Both parties submitted motions for summary judgment

---

apparatus; parts and accessories thereof:

\*      \*      \*

9032.89.60                Other..............................1.7%    Free (MX)

[4] Protest number 2304-02-100182.

[5] HTSUS Heading 8537 and subheading 8537.10.90 provide for:

| 8537 | Boards, panels, consoles, desks, cabinets and other bases, equipped with two or more apparatus of heading 8535 or 8536, for electric control or the distribution of electricity, including those incorporating instruments or apparatus of chapter 90, and numerical control apparatus, other than switching apparatus of heading 8517: |

8537.10                For a voltage not exceeding 1,000 V:

8537.10.90                Other..............................Free (MX)

[6] HTSUS Heading 8418 and subheading 8418.99.80 provide for:

8418                Refrigerators, freezers and other refrigerating or

before this court.  Oral Argument on those motions was held on April 3, 2007.

## III
## STANDARD OF REVIEW

A motion for summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c).  In classification cases, "the proper classification under which [an article] falls . . . has always been treated as a question of law," thus, summary judgment will be appropriate when there is no underlying factual issue regarding the nature of the merchandise remaining in dispute. Bausch & Lomb Inc. v. United States, 148 F.3d 1363, 1366 (Fed. Cir. 1998).

The court reviews classification cases de novo in accordance with 28 U.S.C. § 2640(a).  When deciding classification cases, the court employs a two step analysis in which the first step "concerns the proper meaning of the tariff provisions at hand," and the second step "concerns whether the subject imports properly fall within the scope of the possible headings." Universal Elecs. Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997).  Additionally, the factual determinations made by the agency are presumed to be correct, therefore "the party challenging the classification . . . bears the burden of proof." Totes, Inc. v. United States, 69 F3d 495, 498

---

freezing equipment, electric or other; heat pumps, other than the air conditioning machines of heading 8415; parts thereof:

\*       \*       \*

8418.99.80                     Other...............................Free

(Fed. Cir. 1995) (citing 28 U.S.C. § 2639(a)(1)).

# IV
## DISCUSSION

The HTSUS General Rules of Interpretation ("GRI") govern the classification of merchandise entering the United States. See Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998).  GRI 1 states, in pertinent part, that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes." Harmonized Tariff Schedule of the United States, General Rule of Interpretation ("GRI") 1.  An eo nomine provision describes goods according to their "common and commercial meaning." Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999).  A court may "rely upon its own understanding of the terms used" or consult lexicographic authority or other reliable sources to define a term. Id.  If classification is not resolved by application of GRI 1, the court will refer to the succeeding GRIs in numerical order. See, e.g., Conair v. United States, Slip Op. 05-95, 2005 Ct. Int'l Trade LEXIS 104, at *7 (CIT August 12, 2005).[7]

## A
## Part Number 2204604 was Properly Classified in HTSUS Heading 9032

### 1
### *Apparatus*

Plaintiff first argues that the subject merchandise is not an apparatus as termed by Heading 9032 because "it has several and not a single given purpose." Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Plaintiff's Brief") at 14.  In support of this

---

[7] As part number 2204604 is classifiable using GRI 1, discussion of subsequent GRIs has been omitted.

assertion, Whirlpool cites ITT Thompson Industries v. United States, 3 CIT 36, 44, 537 F. Supp. 1272, 1277-78 (1982), aff'd, 703 F.2d 585 (Fed. Cir. 1982), which defines an apparatus as "a group of devices, or a collection or set of materials, instruments or appliances to be used for a particular purpose or a given end." Id. at 13.

Plaintiff is incorrect in its assertion that the subject merchandise cannot be an apparatus because all of its components do not share the same purpose.  In General Electric Co. v. United States, 247 F.3d 1231 (Fed. Cir. 2001), amended on limited grant of rehearing, 273 F.3d 1070 (Fed. Cir. 2001), the Court of Appeals for the Federal Circuit found an item to be a "combination apparatus" when it contained two components that needed to "independently perform their nonsubordinate functions if the [item] is to operate properly." General Elec., 247 F.3d at 1235. The refrigerator control box subassembly is similarly a combination apparatus, including several components that have independent and non-subordinate functions.

Plaintiff next argues that, if the subject merchandise is an apparatus, it is not an apparatus under Heading 9032. Plaintiff's Brief at 14.  Plaintiff agrees that the thermostat located within part number 2204604 constitutes an apparatus for automatically controlling temperature as specified in Heading 9032, but argues that the control box in its entirety does not meet the requirements to be classified as such. Id.  According to Plaintiff, since the given purpose of the apparatus is to act as a user interface and not only to control temperature, classification in Heading 9032 is precluded. Plaintiff's Brief at 14-15 (citing General Elec., 247 F.3d at 1235 for the proposition that a tariff heading that describes one component of a combination apparatus is not sufficiently specific to mandate classification in that heading).

Defendant counters that the refrigerator control box subassembly can be classified in

Heading 9032 by reference to HTSUS GRI 1.[8] Defendant's Reply Brief in Support of Our

Motion for Summary Judgment and in Opposition to Plaintiff's Response ("Defendant's Reply")

at 9.  According to Defendant, the defrost timer and the thermostat both fall within the definition

of "automatic regulating or controlling instruments or apparatus" when viewed in conjunction

with Note 3[9] (which applies Note 4 of Section XVI to Chapter 90) and Note 6[10] of Chapter 90. Id.

at 9-10.  Defendant asserts that once the principles of Note 4 of Section XVI are applied the

merchandise in issue meets the qualifications of Heading 9032, as it is a machine[11] consisting of

individual components which, with the exception of the light socket, contribute together to the

function of temperature control. Id. at 10.

---

[8] In Defendant's Memorandum in Support of its Motion for Summary Judgment and in
Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Brief") Defendant also
argues that the subject merchandise is classifiable in Heading 9032 by following a GRI 3(b)
analysis. Defendant's Brief at 17.  Because the merchandise is classifiable under a GRI 1 analysis
as the Defendant later argues in its Reply, the GRI 3(b) argument need not be addressed.

[9] HTSUS Chapter 90 Note 3 asserts that "[t]he provisions of note 4 to section XVI apply
also to [Chapter 90]."  Note 4, Section XVI provides:

> Where a machine (including a combination of machines) consists of individual
> components (whether separate or interconnected by piping, by transmission
> devices, by electric cables or by other devices) intended to contribute together to a
> clearly defined function covered by one of the headings in [Chapter 90], then the
> whole falls to be classified in the heading appropriate to that function.

[10] HTSUS Chapter 90 Note 6(a) (after 2002 renumbered as Note 7) limits Heading 9032
to "[i]nstruments and apparatus for . . . automatically controlling temperature, whether or not
their operation depends on an electrical phenomenon which varies according to the factor to be
automatically controlled."

[11] As Defendant notes, the term "machine" as stated in Note 4, and applied by Chapter 90,
Note 3, is defined in Section XVI, Note 5 as "any machine, machinery, plant, equipment,
apparatus, or appliance cited in the headings of . . ." Chapter 90.

2

*Instruments*

As noted above, analysis of classification within the headings of the HTSUS begins with

HTSUS GRI 1, which states that "classification shall be determined according to the terms of the

headings and any relative section or chapter notes."  HTSUS Heading 9032 provides for

"[a]utomatic regulating or controlling instruments or apparatus; parts and accessories thereof,"

which are further described in Chapter 90, Note 6, as instruments and apparatus "for

automatically controlling temperature."  Note 2(a) to Chapter 90 states, "[p]arts and accessories

which are goods included in any of the headings of this chapter or of chapter 84, 85, or 91 . . . are

in all cases to be classified in their respective headings."

The parties are in agreement that the thermostat located in part number 2204604

automatically controls temperature,[12] and that the light socket and wire harness (as individual

units) do not automatically control or regulate temperature, but the nature of the role of the

defrost timer remains in dispute. Plaintiff's Composite Statement of Uncontested Facts

("Uncontested Facts") ¶ 33; Complaint ¶ 20; Answer ¶ 20.  The defrost timer in part 2204604

works in conjunction with the defrost heater to control the defrosting operation of the

refrigerator. Uncontested Facts ¶ 49.  It accumulates the compressor run time, and, after a pre-

determined amount of time, will redirect power to the defrost heater which melts and disburses

any ice that had formed on the evaporator coils. Id.; see Michael D. Blankenship 2d Affidavit,

---

[12] The thermostat located in part number 2204604 functions by lowering the air
temperature in the refrigerator by sending electricity through the wire harness to the compressor,
condenser fan motor, and evaporator fan motor, signaling them to run until it senses a pre-
determined air temperature. Composite Uncontested Facts ¶ 47.  This action qualifies as
automatic regulation of temperature and falls within the scope of HTSUS Heading 9032.

August 2, 2006 ("Blankenship 2d Aff."), ¶ 21 (asserting, "the ice [that had accumulated on the evaporator coil] is then cleared from the coil by using a heater controlled by the defrost timer . . . in part number 2204604").  The defrost timer will then terminate the defrost after a set amount of time by redirecting power through the thermostat. Uncontested Facts ¶ 51.

As the defrost timer functions by monitoring the compressor run time and using that information to regulate when the defrost heater is on or off, Uncontested Facts ¶ 49, it acts as an automatic temperature controller.  Though its temperature regulation is not constant, the purpose of the device and the desired outcome of its action is to change temperature such that it will heat the evaporator coils and melt any ice present on them.  It does this automatically upon gathering information as to the length of time the compressor has run, and automatically allows the temperature to readjust when the function is complete. Uncontested Facts ¶¶ 49-51.  Tellingly, the sole attachment that it controls is described by Mr. Blankenship only as a "heater," clearly designed to raise the temperature on the coils at the defrost timer's signal. Blankenship 2d Aff. ¶ 21.  Though the item monitors time, the purpose and intended outcome of the device's function is temperature control, and thus the defrost timer is properly classified in Heading 9032.[13]

The wire harness located within the refrigerator control box subassembly sends electrical signals to and from the other components located therein, allowing them to complete their functions by connecting to the main refrigerator wiring harness, which in turn is connected to the other working parts of the refrigerator. Uncontested Facts ¶ 35, 38.  The wire harness is thus a component "intended to contribute . . . to a clearly defined function;" it sends the information

---

[13] During oral argument, counsel for Plaintiff argued that an item is properly classified under the HTSUS by what it is, not by what it does.  This assertion fails to take into account the specification in Note 4 to classify components by function.

from the defrost timer and thermostat to other areas of the refrigerator with the purpose of

regulating temperature. HTSUS Section XVI, Note 4.  Therefore, according to Section XVI, Note

4 (applied via Chapter 90, Note 3), the wire harness also "falls to be classified in the heading

appropriate to that function," and is properly classified in Heading 9032 along with the

thermostat and defrost timer components.

The only component of the refrigerator control box that is not involved in the automatic

regulation of temperature in any way is the light socket.  Thus, the intended purpose of the

refrigerator control box <u>as a whole</u> is the automatic regulation of temperature; it is the main

function of the items within the control box and the most important function in relation to the

purpose of the refrigerator.  Part number 2204604 therefore meets the terms of Heading 9032

when viewed in conjunction with the notes to Chapter 90, and was properly classified under

HTSUS subheading 9032.89.60.

**B**
**Part Number 2204604 Cannot be Classified in HTSUS Heading 8537 or 8418**

Plaintiff argues that the subject merchandise is properly described under Heading 8537 as

a panel, equipped with two or more apparatus of heading 8535 or 8536, for electric control.

Plaintiff's Brief at 17.  According to Plaintiff, the plastic housing constitutes a foundation or base

upon which electrical devices rest, and the light socket and terminals attached to the wire harness

are items classified under Heading 8536. <u>Id.</u>  Plaintiff also asserts that the control box's function

meets the definition of "electric control" as involving a process in which "information is input,

and as a consequence, electricity causes the desired result to occur." <u>Id.</u> (quoting <u>Universal</u>

<u>Elecs.</u>, 112 F.3d at 494).  Plaintiff argues that information is input when the thermostat or defrost

timer sense temperature or passage of time, causing the wire harness to send electricity to another

part of the refrigerator that will lower the temperature or start the defrost function. Id. at 18-19. Plaintiff additionally argues that the flow of electricity through the wire harness to the light socket resulting from the switch triggered by the refrigerator door also qualifies as an example of the merchandise functioning "for electric control." Id. at 19.  Plaintiff concludes that because the merchandise should be classified under Heading 8537, the necessary tariff shift occurred,[14] and part number 2204604 qualified as a NAFTA good on entry. Id. at 20.

Defendant responds that the subject merchandise is not within the scope of Heading 8537 because it does not contain two or more apparatus of Heading 8535 or 8536, and it is not "for electric control." Defendant's Brief at 7.  According to Defendant, the merchandise at issue has only one apparatus of Heading 8536, the light socket, as the wire harness and its components identified by Plaintiff falls under Heading 8544 (insulated wire, cable, or other electric conductors, whether or not fitted with connectors). Id. at 8.  Defendant also argues that the subject merchandise does not qualify as an item "for electric control" because it does not provide an electrical means for an individual to control the targeted appliance as was there in Universal Electronics, 112 F.3d at 494. Id. at 9-10.  Defendant additionally notes that the article in question is not for the distribution of electricity, though Plaintiff does not argue that it is. Id. at 12-13.

Plaintiff also argues that the subject merchandise is described under Heading 8418 as a refrigerator part because it is "an integral, constituent part of a complete, functioning

---

[14] HTSUS 1999 General Note 12(t), Chapter 85, subheading 121(A) required, in relevant part, that a good qualifying as a NAFTA-originating good must have non-originating materials that have undergone a tariff shift from any other heading during the manufacturing process in the NAFTA country.  Plaintiff argues that once the thermostat, the only non-originating material in the subject merchandise, was assembled into the refrigerator control box subassembly, it shifted from heading 9032 to heading 8537 as required. Plaintiff's Brief at 20.

refrigerator," and it is "'dedicated solely for use' with a refrigerator." Plaintiff's Brief at 21

(citing United States v. Willoughby Camera Stores, Inc., 21 CCPA 322, 324 (1933) and United

States v. Pompeo, 43 CCPA 9, 14 (1955)).  Though it asserts that the subject merchandise

properly fits in Heading 8418, Plaintiff states that Note 2(a) to Section XVI requires that it be

classified in Heading 8537 if it qualifies for both.[15] Id. at 22.  While Defendant does not dispute

that the subject merchandise comes within the terms of Heading 8418, it argues that because the

merchandise at issue is also provided for in Heading 9032, it is properly classified there.[16] Id. at

19.

    As established in section A above, the merchandise in question fits into the terms of

Heading 9032.  Because of this, analysis of the scope of Chapter 84 and 85 falls within the

provisions of Note 1(m) to Section XVI, which states that the section does not cover Articles of

Chapter 90, such as the refrigerator control box subassembly here.  The merchandise thus cannot

be classified under subheading 8537 or 8418 regardless of whether it can be described by those

headings, due to the mandate of the section notes.

    Additionally, even if the subject merchandise were not within the terms of a Chapter 90

Heading it would still not be classifiable under Heading 8537.  While the Court of International

---

[15] Note 2(a) to Section XVI requires that parts which are goods under Heading 84 or 85 must be classified "in their respective headings."  Plaintiff argues that as the subject merchandise is a good under Heading 8537 that classification takes precedence over the part classification in Heading 8418. Plaintiff's Brief at 22.

[16] Defendant argues that Heading 9032 is more specific than Heading 8418, citing Knowles Electronics v. United States, 504 F.2d 1403 (1974). Defendant's Brief at 19.  Defendant also argues that if the two headings are equally specific it will be classified in Heading 9032 pursuant to GRI 3(c), "under the heading which occurs last in numerical order among those which equally merit consideration." Id. (quoting HTSUS GRI 3(c)).

Trade in Universal Electronics acknowledges that 8537.10.90 refers to a "broad range of items," it also specifies that in order to fall within the subheading an item "must be part of a system in which information is input, and as a consequence, electricity causes the result to occur." Universal Elecs., 20 CIT at 340.  Though there is a control knob on the unit that allows a person to set the desired temperature in the refrigerator, the consequence of that is too removed to fall within the court's requirement.  There is no immediate and exact change as is the case with the remote control; rather, the electrical signal is sent as a result of the thermostat or defrost timer sensing the change in temperature or activity of the compressor.  Thus, the desired output is not as much a consequence of the information that was input by the user as it is a consequence of the information sensed by the item.  The refrigerator control box subassembly is therefore not equipped with two or more apparatus "for electric control."  Thus, the merchandise in question does not fall within the provisions of Heading 8537.

## V
## CONCLUSION

For the foregoing reasons, Whirlpool's Motion for Summary Judgment is Denied and the Government's Motion for Summary Judgment is Granted.  Accordingly, Customs' classification of Whirlpool part number 2204604 in HTSUS Subheading 9032.89.60 is affirmed.

_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: July 18, 2007
        New York, New York

13

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                 :
WHIRLPOOL CORPORATION,           :
                                 :
            Plaintiff,           :
                                 :         Before:      WALLACH, Judge
      v.                         :         Court No.:   03-00526
                                 :
UNITED STATES,                   :
                                 :
            Defendant.           :
_____ :
```

ORDER AND JUDGMENT

      This case having come before the court upon the Motion for Summary Judgment filed by Plaintiff Whirlpool Corporation ("Plaintiff's Motion"), and Defendant's Motion for Summary Judgment filed by Defendant United States ("Defendant's Motion"); the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

      ORDERED, ADJUDGED and DECREED that Plaintiff's Motion is DENIED; and it is further

      ORDERED, ADJUDGED and DECREED that Defendant's Motion is GRANTED; and it is further

      ORDERED, ADJUDGED and DECREED that the imported item at issue in this case is properly classified under Heading 9032, Subheading 9032.89.60 of the Harmonized Tariff Schedule of the United States (1999), at a duty of 1.7% ad valorem; and it is further

      ORDERED, ADJUDGED and DECREED that judgment be, and hereby is, entered in favor of Defendant and against Plaintiff; and it is further

ORDERED that all parties shall review the court's Opinion in this matter and notify the court in writing on or before Wednesday, July 25, 2007, whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter.  The parties shall suggest alternative language for any portions they wish deleted.  If a party determines that no information needs to be deleted, that party shall so notify the court in writing on or before July 25, 2007.

_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: July 18, 2007
      New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                                                            Deputy Clerk